UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEOCADIO L. L.,** | Civil Action No. 20-4605 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Leocadio L. L., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 5), to which Petitioner has replied. (ECF No. 7). Petitioner also filed an unopposed motion seeking to seal his medical records. (ECF No. 9). For the following reasons, this Court will grant the motion to seal, deny the petition without prejudice and deny the motion seeking a temporary restraining order as moot in light of the denial of Petitioner's habeas petition.

**I. BACKGROUND**

Petitioner is a thirty-four year old native and citizen of Guatemala. (Document 5 attached to ECF No. 5 at 2; Document 11 attached to ECF No. 1 at 17). Petitioner illegally entered the United States without inspection or parole at some time in 2013, allegedly to escape racial persecution in his home country. (Document 2 attached to ECF No. 1 at 2; Document 5 attached to ECF No. 5 at 2). On September 5, 2019, Petitioner was taken into immigration custody and

placed in immigration detention pursuant to the Government's discretionary detention authority under 8 U.S.C. § 1226(a) pending the conclusion of removal proceedings. (Document 2 attached to ECF No. 1 at 2; Document 7 attached to ECF No. 5 at 2). Petitioner has remained in immigration detention since that time and is still in the process of litigating his removal before an immigration judge. (ECF No. 5 at 2). Petitioner initially appeared before an immigration judge for a bond hearing on September 30, 2019 but withdrew his initial bond request so that he could hire a lawyer before proceeding. (Document 8 attached to ECF No. 5 at 2). Petitioner appeared for another bond hearing with counsel on October 29, 2019. (Document 9 attached to ECF No. 5 at 2). At that time, the immigration judge denied Petitioner's bond request as the judge found Petitioner to be a flight risk. (*Id.*). Although Petitioner reserved his right to appeal that decision, (*see id.*), it does not appear that Petitioner ever appealed that decision, nor does it appear he has sought a bond redetermination since October 2019. (*See* ECF No. 5 at 2).

While detained in the Elizabeth Contract Detention Facility, Petitioner has been seen by medical staff multiple times. On March 3, 2020, Petitioner appeared presenting symptoms including a sore throat, productive cough, and runny nose, all without a fever. (ECF No. 2 at 9). When diagnostic tests including a strep throat swab proved negative, Petitioner was prescribed medication for his cough, pain, and nasal issues. (*Id.* at 10). Petitioner returned to the medical department on March 25, 2020, for a headache. (*Id.* at 5-6). After an examination and Petitioner's vitals failed to provide signs of more serious issues, Petitioner was provided Tylenol for pain. (*Id.*). Two days later, Petitioner returned complaining of mild back pain. (*Id.* at 2-3). Petitioner was examined, provided ibuprofen for pain and was instructed to use an ice pack on the affected area. (*Id.*). It is not clear if Petitioner was seen by medical staff after March 25, as Petitioner asserts that he "stopped going to the medical unit for help" because they told him they couldn't

help him "every day." (Document 2 attached to ECF No. 1 at 3-4). Petitioner claims that he has "had trouble breathing" at unspecified times and that he has, at other unspecified times, "felt lightheaded" but was told nothing was wrong when he went to the medical unit for examination, a finding with which he was apparently unhappy. (*Id* at 3-4). According to Petitioner's proposed medical expert, Petitioner is not at higher risk of COVID-19 complications due to his age, but he may be at higher risk because he is currently obese. (Document 11 attached to ECF No. 1 at 17-18). Another medical expert Petitioner provides asserts that Petitioner may have undiagnosed high blood pressure, which is also a COVID-19 risk factor to the extent Petitioner actually has high blood pressure. (ECF No. 2 at 12).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

## B. Analysis

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from immigration detention because he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his medical history and the general threat posed by the COVID-19 epidemic. As this Court recently explained in *Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020), claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g.*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020)

(denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component

> requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a legitimate interest in securing aliens during their removal proceedings. *Jennings*, 138 S. Ct. at 836. This interest is especially strong in those cases, such as Petitioner's, in which the alien was found by an immigration judge to be a flight risk.[1]  *Id.* As Petitioner has not shown an express intent to punish on the part of the detention facility or its staff, he can only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration

---

[1] In his reply brief, Petitioner expresses his disagreement with the immigration judge's conclusion that he is a flight risk, and suggests that the immigration judge's decision should essentially be ignored because the Government has not specifically identified the basis for the immigration judge's decision. This Court, however, has no jurisdiction to reconsider the bond decision of an immigration judge, and Congress has specifically deprived the Court of any authority to review the merits of that determination. *See, e.g., Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-80 (3d Cir. 2018); 8 U.S.C. § 1226(e). Where, as here, a Petitioner fails to show that he was in some way denied procedural Due Process at his bond hearing before the immigration judge, this Court lacks any ability to review the immigration judge's bond decision, and there is no basis for the granting of a second bond hearing. *Borbot*, 906 F.3d at 278-80. To the extent Petitioner disagrees with the immigration judge's finding that he is a flight risk, he is free to file a motion for a bond redetermination before the immigration judge. *Id.*

detention are arbitrary, purposeless, or excessive in relation to the Government's interest in detaining him.

Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are not excessive in relation to that interest and are neither arbitrary nor purposeless. Since March 2020, the facility has taken considerable concrete steps to mitigate and alleviate the risk posed to detainees by the COVID-19 pandemic. Specifically, the facility, which is currently operating below fifty percent capacity to ensure adequate space for social distancing, is following CDC guidelines for detention facilities in relation to testing and preventative action. (Document 10 attached to ECF No. 5 at 1-2). This includes screening each detainee for disabilities, health issues, and any signs of fever or respiratory illness as well as potential prior exposure to COVID-19 when they first arrive at the facility; the isolation, testing, and treatment of those detainees who have symptoms of COVID-19; the transfer of those presenting severe symptoms to local hospitals for treatment; the placement of those who are asymptomatic but have been exposed to infected individuals in separate, cohorted units where they receive daily temperature and symptom monitoring for at least fourteen days; and COVID-19 testing for those who show known symptoms of the virus. (*Id.* at 2-3). Additionally, the facility has increased the frequency of cleaning and sanitization; provided additional soap for detainee use; has supplied both soap and hand sanitizer to the medical clinic, provided COVID-19 related education to inmates and staff; purchased and provided all detainees with masks; limited or eliminated entry into the facility of non-essential personnel, volunteers, and visitors; implemented temperature screening for all staff and vendors entering the facility; and taken steps to ensure detainees remain six feet apart including during meals and during bunk time. (*Id.* at 3-5). Taken in the aggregate, these actions clearly indicate that the facility has taken considerable steps to protect its detainee population, and as a result of

these steps, the conditions under which Petitioner is confined are clearly reasonably related to the Government's clear interest in detaining him pending the outcome of his removal proceedings. These conditions are neither purposeless nor arbitrary – they are directly tailored to address the threat posed by COVID-19 and to protect detainees such as Petitioner from the virus to the extent reasonably possible in a civil detention setting.  Petitioner has thus failed to show that the facility and its staff intended to punish him, nor has he shown that the conditions under which he is housed are excessive, arbitrary, or purposeless, and his conditions of confinement claim thus fails to set forth a cognizable basis for habeas relief.  *Jorge V.S.*, 2020 WL 1921936 at *2-4.

Petitioner's deliberate indifference to medical needs claim fares no better as a basis for habeas relief.  Here, Petitioner's medical records indicate that in each instance in which he reported health issues to the facility's medical staff, he was evaluated and provided medication to alleviate the specific symptoms that brought him to the medical office.  By Petitioner's own admission, when he went to the medical department on other occasions, staff evaluated him and told him there was no issue requiring further treatment.  That Petitioner has chosen not to make use of the facility's medical department going forward is not indicative of deliberate indifference on the part of medical staff, but rather Petitioner's own conscious choice.  In light of the treatment he has received, and the considerable action taken by the facility in light of COVID-19, Petitioner has failed to show that the facility or its medical staff have been deliberately indifferent to his medical needs.  His medical needs claim thus fails to present an adequate basis for habeas relief.  *Jorge V.S.*, 2020 WL 1921936 at *2-4.  As Petitioner has failed to show that he has either been exposed to punitive conditions or that the facility and its staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to set out a valid basis for habeas relief, and his petition is therefore denied.  Petitioner's motion seeking a temporary restraining order is in turn

denied as moot given the denial of his petition.  In light of the privacy interests Petitioner has in keeping his medical records from public view and the fact that immigration habeas matters are in any event normally not available for public access, and given the Government's decision not to oppose the motion, Petitioner's motion to seal his medical records (ECF No. 9) is granted.

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE, his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition, and his motion to seal his medical records (ECF No. 9) is GRANTED.  An appropriate order follows.


Dated: May 28, 2020                           *s/Susan D. Wigenton*
                                                      Hon. Susan D. Wigenton,
                                                      United States District Judge